United States District Court
Southern District of Texas
**ENTERED**
May 31, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERARDO GARZA, et al., <br> *Plaintiffs*, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. 4:22-cv-4288 |
| HOUSTON METHODIST HOSPITAL, | § <br> § <br> § | |
| *Defendant*. | § | |

## ORDER

Pending before the Court is Defendants Houston Methodist Hospital and The Medical Staff of Houston Methodist The Woodlands Hospital's ("Houston Methodist," "Methodist" or "Defendants") Amended Motion to Dismiss.[1] (Doc. No. 17). Plaintiffs Gerardo Garza, *et al.*, ("Plaintiffs") responded in opposition. (Doc. No. 22). Defendants replied. (Doc. No. 23). For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss. (Doc. No. 17).

### I. Background

This case involves allegations of religious discrimination related to Houston Methodist's vaccine mandate during the COVID-19 pandemic. Plaintiffs all worked at Houston Methodist in various capacities—as nurses, physical therapists, respiratory therapists, and radiology technologists, to name a few. Plaintiffs allege that they sincerely held a religious belief that prevented them from receiving the COVID-19 vaccine, and they requested accommodations to be exempted from Houston Methodist's vaccine mandate. Plaintiffs allege that their accommodation

---

[1] Plaintiff, Tom Reed, sued Houston Methodist Hospital and The Medical Staff of Houston Methodist The Woodlands Hospital as Defendants. The rest of Plaintiffs named only Houston Methodist Hospital as the lone Defendant.

requests were denied and that they were subsequently discharged for failing to comply with Houston Methodist's vaccination requirement.

Plaintiffs each initiated a lawsuit against Houston Methodist alleging violations of Title VII for religious discrimination.[2] Finding that the suits arise out of similar occurrences, that they share common issues of fact and law, and that consolidation would save the parties' time and money, as well as saving judicial resources, the Court consolidated the suits into the above-styled matter. (Doc. No. 14). Once all cases had been consolidated, Houston Methodist filed an Amended Motion to Dismiss, presenting two main arguments for dismissal. First, Houston Methodist argues that it is an exempt religious organization under Title VII and therefore cannot be sue for religious discrimination in its employment decisions. Second, Houston Methodist argues that Plaintiffs' specific religious exemption requests do not state claims of relief under Title VII.

## II. Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that

---

[2] Plaintiff Judith Andriko sued Houston Methodist for allegedly violating the Americans with Disabilities Act. Houston Methodist's motion does not target her claims.

2

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

As noted above, Houston Methodist presents two main arguments for dismissal. First, Houston Methodist argues that it is an exempt religious organization under Title VII and therefore cannot be sue for religious discrimination in its employment decisions. Second, Houston Methodist argues that Plaintiffs' specific religious exemption requests do not state claims of relief under Title VII. Plaintiffs responded in opposition on both points.

#### A. *Whether Plaintiff Tom Reed has Alleged an Employment Relationship*

Before examining the two main points described above, the Court will first briefly address the issue of whether Plaintiff Tom Reed has plausibly alleged that he had an employment relationship with Houston Methodist, given that he was a "private" physician with surgical privileges. As he alleges, Reed was a member of Houston Methodist's medical staff with staff privileges at Houston Methodist The Woodlands Hospital.

Methodist argues that Reed is not an employee and therefore lacks standing to pursue a Title VII claim against Houston Methodist. *See Simmons v. UBS Finc. Servs., Inc.*, 972 F.3d 664, 668 (5th Cir. 2020). As a general rule, physicians are not considered employees or agents of the

3

hospitals at which they enjoy staff privileges. *Berel v. HCA Health Servs. of Tex., Inc.*, 881 S.W.2d 21, 23 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In fact, as part of his religious exemption request, Reed took issue with the fact that Houston Methodist provided him with a form that referred to "Methodist employees."

> The form with a note requiring Religious Authority to sign specifically addresses <u>Methodist employees</u>, thereby making it an invalid application for me since I am not an employee but a physician with surgical privileges to perform my trade at Methodist hospital in the Woodlands, Texas.

(Doc. No. 17, Ex. C) (emphasis in original). Thus, Houston Methodist contends that Reed has not, and cannot, allege an employment relationship, and in fact, he judicially admitted that he is not an employee.

In response, Plaintiffs contend that a physician is an employee of the hospital at which they enjoy staff privileges, although they do so without citing any legal authority supporting this contention. Plaintiff merely argues that "[r]egardless of Plaintiff Reed's job title whilst employed at Houston Methodist, he is still an employee." (Doc. No. 22 at 26).

The Fifth Circuit has held that the determination of employer status for Title VII purposes requires a two-part analysis. *Muhammad v. Dallas Cty. Cmty. Supervision and Corr. Dep't.*, 479 F.3d 377, 380 (5th Cir. 2007). First, a court looks to whether the defendants meet the statutory definition of employer; that is, the defendant must be "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b). Second, the court considers whether the requisite employment relationship exists by applying a "hybrid economic realities/common law control test." *Muhammad*, 479 F.3d at 380. The test first focuses on whether the defendant has the right to hire, fire, supervise, and set a work schedule for employees. *Id.* The Fifth Circuit has referred to this portion as the "control component." *Miller v. Sam Houston State*

4

*Univ.*, 986 F.3d 880, 890 (5th Cir. 2021). Additionally, courts should consider the "economic realities" component, in which courts examine "whether the defendant in question paid the employee's salary, withheld taxes, provided benefits, and set terms and conditions of employment." *Id.*

The Fifth Circuit has noted that the test outlined above is "necessarily a fact-specific inquiry and **is therefore typically applied in a summary judgment context**, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 890 (5th Cir. 2021) (quoting *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dept.*, 479 F.3d 377, 382 (5th Cir. 2007)) (emphasis added). In fact, every case cited by Methodist Houston was decided at the summary judgment stage or after a bench trial.

Here, at the motion to dismiss stage, the Court is limited primarily to the allegations in Plaintiff's complaint. Plaintiff Reed's complaint alleges that "[a]t all times relevant hereto, Defendants exercised sufficient control over the day-to-day details of Plaintiff's work at Houston Methodist, The Woodlands Hospital to make Plaintiff an employee of Defendants." (*4:22-cv-4360*, Doc. No. 1 at 3). Given the factual nature of the employment relationship, and accepting all well-pleaded facts as true, the Court finds dismissal to be premature here. The Court therefore denies Houston Methodist's motion to dismiss on this issue.[3]

---

[3] The Court cautions Dr. Reed to fully consider all of the ramifications of taking a legal position that he might later regret. First, it is a position directly opposite of the one he took earlier. Second, he may owe certain duties to Houston Methodist as an employee. For example, one could argue that, as an employer, Houston Methodist would be owed all of the fees its employee has earned ever since that employee has been practicing there.

5

B. *Whether Houston Methodist is an Exempt Religious Organization*

Methodist argues that it is entitled to dismissal of Plaintiffs' religious discrimination claims because it is an exempt religious organization under Title VII. Under § 2000e-1(a) of Title VII, religious organizations are exempt from the prohibition against discrimination on the basis of religion. *See* 42 U.S.C. § 2000e-1(a); *see also Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 329 (1987). Specifically, § 2000e-1(a) provides:

> This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a). While Title VII does not provide a definition for "religious organization," many district courts, including at least one district court in the Fifth Circuit, look to the nine factors articulated in *LeBoon v. Lancaster Jewish Community Center* for guidance. 503 F.3d 217 (3d Cir. 2007); *See Scaffidi v. New Orleans Mission, Inc.*, 2020 WL 1531266, *4 (E.D. La. Mar. 31, 2020). These nine potentially relevant factors are as follows:

1. whether the entity operates for a profit;
2. whether it produces a secular product;
3. whether the entity's articles of incorporation or other pertinent documents state a religious purpose;
4. whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue;
5. whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees;
6. whether the entity holds itself out to the public as secular or sectarian;
7. whether the entity regularly includes prayer or other forms of worship in its activities;
8. whether it includes religious instruction in its curriculum, to the extent it is an educational institution; and
9. whether its membership is made up by coreligionists.

*Id.* at *4-5. Not all factors will be relevant in all cases. *LeBoon*, 503 F.3d at 227. Further, "the weight given each factor may vary from case to case." *Id.*

Here, Houston Methodist argues that it is a religious organization exempt from religious discrimination claims under Title VII. Methodist presents thoughtful arguments (and some evidence) that the *LeBoon* factors above weight in its favor. For example, it is a non-profit organization, its articles of incorporation state a religious purpose, it is supported and controlled by The Methodist Church, and at least sixty percent of its Board of Directors must be lay members or ministers of churches. (Doc. No. 17 at 14). Methodist provides compelling case law in its favor as well. *See e.g., Boydston v. Mercy Hosp. Ardmore, Inc.*, 2020 WL 1448112 (W.D. Okla. Mar. 25, 2020) (finding Catholic hospital to exempt from Title VII religious discrimination claims because it was a religious organization under the *LeBoon* factors); *see also Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021 (N.D. Iowa 2006) (same).

Once again, however, all of the cases decided by Methodist were decided in a summary judgment posture.[4] Indeed, Plaintiffs argue that dismissal based on the religious organization exemption is premature, and that at the very least, Plaintiff should be permitted to conduct limited discovery on the applicability of the *LeBoon* factors. (Doc. No. 22 at 28).

Upon consideration, the Court agrees with Plaintiffs that dismissal is premature. Whether Houston Methodist is a religious organization is an issue better addressed at a later stage of litigation with the benefit of evidence. The Court will revisit the issue should Houston Methodist file the proper motion at the appropriate time, but now is not that time. For this reason, the Court denies Houston Methodist's motion on this issue.

---

[4] Methodist conceded this point at oral argument.

C. *Whether Plaintiffs' Specific Accommodation Requests Alleged Sincerely Held Religious Beliefs that Conflicted with the COVID-19 Policy*

The final issue raised in Methodist's motion is whether the Plaintiffs have stated a claim for relief under Title VII. Specifically, Methodist challenges whether each Plaintiff's accommodation request stated a sincerely held religious belief that conflicted with the hospital's COVID-19 policy.

The *prima facie* elements a plaintiff bringing a failure-to-accommodate claim must show are: (1) he held a bona fide religious belief, (2) his belief conflicted with a requirement of his employment, (3) he informed his employer of his belief, and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014). Plaintiffs allege they (1) held bona fide religious beliefs, (2) that these beliefs conflicted with the hospital's COVID-19 vaccine mandate, (3) that they informed Houston Methodist of their sincerely held religious beliefs that prevented them from accepting the COVID-19 vaccine, and (4) that Houston Methodist discharged[5] Plaintiffs for failing to comply with the COVID-19 policy.

To determine whether Plaintiffs' accommodation requests sufficiently support a *prima facie* case for religious discrimination, the Court must examine the requests themselves. Typically, a court cannot look outside the pleadings in reviewing a motion to dismiss. However, a court may consider documents that a defendant attaches to a motion to dismiss, if the documents are "referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500 (5th Cir. 2000); *see also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014). Here, Plaintiffs refer to the materials that they submitted to Houston Methodist in seeking religious exemptions from the COVID-19 policy in their complaints, and

---

[5] Or in Plaintiff Tom Reed's case, terminated his staff privileges.

8

these materials are clearly central to their claims. Therefore, the Court may consider these materials in determining the Rule 12(b)(6) motion.

These materials are not uniform among the Plaintiffs. In other words, each Plaintiff justified his or her religious exemption request differently, relying on different reasons, beliefs and/or scriptures. Thus, the Court must address each individually. Still, when looking at the various Plaintiffs' different accommodation requests, some common themes emerge. For example, some Plaintiffs refused the vaccine because they believed it had not been thoroughly tested and/or because it had not been approved by the FDA. Others refused the vaccine based on their belief that their body is a temple, or that after prayer and reflection, their conscience would not permit them to receive the vaccine. With this background in mind, the Court turns to the heart of the issue—whether these beliefs, as articulated by Plaintiffs to Houston Methodist, constitute sincerely held religious beliefs so as to support their failure to accommodate claims. Houston Methodist claims that these beliefs, as articulated by Plaintiffs, are not sincerely held *religious* beliefs and are instead medical or secular preferences couched in religious terminology. Obviously, Plaintiffs disagree.

    i.    <u>The Law in General</u>

"Bona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" *Davis*, 765 F.3d at 485 (citing 29 C.F.R. § 1605.1) (citing *United States v. Seeger*, 380 U.S. 163 (1965)). A court's inquiry into the religious nature of a plaintiff's proffered belief is limited. *Davis*, 765 F.3d at 485. In other words, a Plaintiff's "allegedly sincere religious beliefs are not unchallengeable." *Allen v. Benson*, 2023 WL 5961647, *11 (E.D. Tex. Sept. 13, 2023). "[A] belief is 'religious' if it is [a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by . . .

9

God." *Davis*, 765 F.3d at 485 (internal citations omitted). "The specific religious practice must be examined rather than the general scope of applicable religious tenets . . . ." *Id.*

While a court's inquiry into an individual's motivation is somewhat restrained, courts have historically found that there are also limits as to what qualifies as a bona fide religious belief. More specifically, the EEOC has issued express guidance that objections to COVID-19 vaccines "'purely based on social, political, or economic views or personal preferences . . . (including about the possible effects of the vaccine)' are not religious beliefs under Title VII." *Kather v. Asante Health Sys.*, 2023 WL 4865533, *3 (D. Or. July 28, 2023).

ii. <u>Fifth Circuit Law as applied to COVID-19 Vaccine Mandates</u>

While the Fifth Circuit does not appear to have addressed this exact issue, the Circuit has addressed the intersection of COVID-19 vaccine mandates and sincerely held religious beliefs at least twice. First, in *Sambrano v. United Airlines, Inc.*, the Circuit addressed the narrow question of whether plaintiffs had demonstrated irreparable harm to obtain a preliminary injunction when they had been placed on unpaid leave for refusing the COVID-19 vaccine due to their religious beliefs regarding fetal cell lines. *Sambrano v. United Airlines, Inc.*, 2022 WL 486610 (5th Cir. 2022). The panel did not scrutinize the sincerity or religiosity of the Plaintiff's beliefs; yet, it found that the plaintiffs had demonstrated irreparable harm.

Second, and perhaps more instructive, is *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022). In this case, the Circuit declined to stay the district court's preliminary injunction which enjoined the Department of Defense (among others) from enforcing certain COVID-19 vaccine requirements. The plaintiffs were Navy Special Warfare service members who sought religious exemptions from the COVID-19 vaccine mandate and objected to receiving the vaccine due to their "sincerely held religious beliefs." *Id.* at 342. Their objections included, *inter alia*, "the

vaccine's ties to aborted fetal cell lines, divine instruction not to receive the vaccine, and the mRNA vaccines' altering the divine creation of their body by unnaturally inducing production of spike proteins." Though not central to its holding,[6] the panel discussed the service member's religious beliefs, observing the following: "Plaintiffs have thoughtfully articulated their sincere religious objections to taking the vaccine itself. Accepting the vaccine would directly burden their respective faiths by forcing them to inject an unremovable substance at odds with their most profound convictions . . . The vaccine requirements principally compete against their faiths and secondarily against their livelihoods." *Id.* at 350. These comments by the panel seem to indicate its acceptance of the sincerity and religiosity of the Plaintiffs' beliefs; however, the comments do not clarify which belief/objection to the vaccine (aborted fetal cell lines, divine instruction, or altering the divine creation of the body) the panel found controlling.

### iii. Other Courts' Approaches

Purported religious objections to the COVID-19 vaccine—such as fetal cell lines, divine instruction, and altering the divine creation of the body—are not unique to the Fifth Circuit. Rather, courts across the country have grappled with religious objections to the COVID-19 vaccine. Seeing as every plaintiff carries his or her own unique beliefs, courts have struggled to assess whether a certain belief, as articulated by the plaintiff, is truly religious in nature or is merely secular/personal. On one hand, the Tenth Circuit thought it was improper for a state employer to even inquire into as to why an applicant's religion opposed to being vaccinated. *See Does 1-11 v. Bd. of Regents of Univ. of Colorado*, No. 21-1414, 2024 WL 2012317 (10th Cir. May 7, 2024). In *Does*, the Tenth Circuit stated:

---

[6] The Defendants did not dispute that the COVID-19 vaccination requirements burdened each Plaintiff's free exercise of religion and thus did not argue the contrary on appeal. *Id.* at 350.

11

> . . . the Administration was entitled to ask applicants whether they opposed being vaccinated for *religious reasons*, rather than secular ones. But an employee could answer that question with little more than "yes" or "no." The *why* sought by the Administration, and endorsed by the partial dissent, transgressed all boundaries set by the Religion Clauses. The Administration was not entitled to demand a further explanation about the mechanics of employees' religious doctrines, or to ask employees to detail why their religious beliefs proscribe receipt of a COVID-19 vaccine, or to require employees to justify the differences between their past religious views on other vaccines and their current religious views on COVID-19 vaccines.

*Does*, at *22. (emphasis in original). While this case is procedurally quite different than the case at issue here, the Tenth Circuit nevertheless strongly suggests that an applicant's burden to justify their religious belief is quite low, and that any government [or judicial] scrutiny of that justification should be extremely limited.

On the other hand, there are courts that acknowledge that judicial inquiry is limited, yet go on to conduct a detailed inquiry that determines whether a plaintiff's belief is more religious or secular in nature. For example, a court in the Eastern District of Pennsylvania found that, while the plaintiff characterized his beliefs as "religious," his explanation of his beliefs revealed that the objections were not religious in nature. *Winans v. Cox Auto., Inc.*, 669 F. Supp. 3d 394 (E.D. Pa. 2023). Upon examining the plaintiff's explanation, the Court ruled:

> Here, the Complaint primarily details Plaintiff's purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects. The Complaint also alleges that Plaintiff "holds sincere concerns surrounding" the use of fetal cell lines from aborted fetuses in the production and development of the vaccine. It does not, however, allege that Plaintiff's concern with the use of fetal cell lines arises out of any comprehensive religion—formal or informal—that drives the way he thinks about "deep and imponderable matters." The Complaint does not even identify why Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine developers. Moreover, Plaintiff does not link his "sincere concerns" with the use of fetal cell lines to any "formal and external signs" of religion.

*Id.* at 401. Based upon the above analysis, the *Winans* court dismissed the plaintiff's religious discrimination claim because it found that his beliefs were not religious in nature, but instead were

secular. *Id.*; *see also Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) ("The court concludes that [Plaintiffs] refused the vaccine based on their personal judgments about vaccine safety and not for religious reasons. They couched their requests in religious terms, claiming that their decisions had been ratified by prayer. But the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion."); *see also Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (finding the plaintiff's allegations that "she has a 'God given right to make [her] own choices'—which, implicitly, her employer must unfailingly respect—would amount to a blanket privilege and a limitless excuse for avoiding all unwanted [ ] obligations" and thus dismissing her complaint relating to COVID-19 vaccination).

These courts clearly delved into each articulated belief and decided which beliefs were *actually* religious in nature and which were not. These courts used a more incisive process that allowed them to separate those beliefs that they truly found to be secular as opposed to those they found to be based on religious doctrine. Houston Methodist would have this Court follow their example, by ruling, for instance, that a Plaintiff who objected to the vaccine because it was not FDA approved had not articulated a *religious* objection but rather a medical or scientific one.

As demonstrated above, courts have taken vastly different approaches to determining whether a certain belief is religious, ranging from complete abstention to more thorough examination. Here, based on Fifth Circuit precedent, the Court is of the opinion that scrutinizing Plaintiff's beliefs would be inappropriate at this stage. The Fifth Circuit "has cautioned that judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" *Davis*, 765 F.3d at 486 (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)). "Indeed, 'the sincerity of a plaintiff's engagement in a particular religious practice

is rarely challenged,' and 'claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions.'" *Id.* (quoting *Tagore*, 735 F.3d at 328). Courts must focus their analysis on whether the plaintiff sincerely holds the alleged religious beliefs, and not on the method or manner in which the plaintiff adheres to the alleged belief. *See id.* at 486–87.

In *Davis*, the Fifth Circuit panel did not provide guidance on how, if at all, courts should draw the line between religious and non-religious beliefs. The majority opinion, as quoted below, is written in fairly sweeping language. In its own analysis, the majority does not address, much less examine, the religiosity of the plaintiff's beliefs (despite the fact that the district court had found the plaintiff's belief to be personal rather than religious in nature). Indeed, it was the majority's failure to address whether Plaintiff's beliefs were actually religious that formed the catalyst for the dissent. The dissent opens by stating "In its well-written opinion, the majority errs in holding that our inquiry is limited to the sincerity of an employee's alleged religious belief; we must also consider whether that belief is "religious" in nature or merely a personal preference or a secular social or economic philosophy." *Davis*, 765 F.3d at 491 (Smith, J. dissenting opinion). The dissent goes on to say that, because the district court had found Plaintiff's belief to be personal and not religious, that was the real issue presented on appeal. Furthermore, by failing to acknowledge that courts must evaluate the religiosity of a belief, the majority's holding "conflicts with the decisions of every circuit to have addressed this issue" because every other circuit has "held that courts must consider both whether a belief is religious in nature and whether it is sincerely held." *Id.*

Herein lies this Court's dilemma, and ultimately, the reason it cannot now rule in Methodist's favor. The *Davis* decision omits any discussion of whether, or how, a court should

14

draw the line between religious and secular beliefs. To the contrary, it outright states "whether the belief is a true religious tenet is 'not open to question.'" *Davis*, 765 F.3d at 485 (quoting *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 790 (5th Cir. 2012)). It further states that the sincerity of a person's religious belief is a fact question unique to each case. *Id.* Houston Methodist urges the Court to follow district court decisions from outside of this Circuit, several of which have appeals pending. For example, Houston Methodist argues the Court to find that certain Plaintiffs' objections are really medical or scientific opinions couched in religious terms. *See* (Doc. No. 17 at 22) (Plaintiff Sherry Colbert objecting because "I don't feel a vaccination that is not approved by the FDA with the proper testing and time for safety is good for my safety of [sic] the safety of others."); *see also* (*Id.*) (Plaintiff De'Anna Conway objecting because "I have no spiritual peace receiving the COVID vaccine that is still in clinical trials and has only six months of data available."). While many of the Plaintiffs do mention the lack of FDA approval or concerns about testing, for most, that is not their only reason given for objecting to the COVID-19 vaccine mandate. Many discuss prayer, scripture, divine instruction, and the belief that their body is a temple. More importantly, all Plaintiffs mention God and/or classify their belief as religious. This arguably put these cases under the auspices of *Davis*, which seems to prohibit the very inquiry Methodist urges this Court to conduct.

      Considering the early stage of this litigation and keeping in mind the Fifth Circuit's warning that the inquiry into the sincerity of religious beliefs should be handled with judicial shyness, the Court does not find that it can dismiss any of Plaintiffs' claims for failure to articulate a bona fide religious belief that conflicted with Houston Methodist's COVID-19 policy. Initially, this ruling is based primarily on Fifth Circuit precedent that this Court must follow. In *Davis,* the Fifth Circuit not only chose *not* to inquire into the religiosity of the plaintiff's alleged belief, but

also appeared to find such beliefs to be unquestionable. It reversed the district court, which had dismissed the plaintiff's claim precisely because it found her beliefs to be "due to personal commitment, not religious conviction." *Davis v. Fort Bend Cnty.,* No. 4:12-CV-131, 2013 WL 5157191 (S.D. Tex. Sept. 11, 2013), *aff'd in part, rev'd in part,* 765 F.3d 480 (5th Cir. 2014). Second, the Court relies on the Fifth Circuit's opinion in *U.S. Navy Seals 1-26*, an opinion that, when faced with similar religious objections to the vaccine, stated "Plaintiffs have thoughtfully articulated their sincere religious objections to taking the vaccine itself. Accepting the vaccine would directly burden their respective faiths by forcing them to inject an unremovable substance at odds with their most profound convictions . . . The vaccine requirements principally compete against their faiths and secondarily against their livelihoods." *U.S. Navy Seals 1-26 v. Biden,* 27 F.4th 336, 350 (5th Cir. 2022). Accordingly, Houston Methodist's motion to dismiss is denied at this stage as to this issue as well.

### IV.     Conclusion

For the reasons above, the Court hereby DENIES Defendant Houston Methodist's Motion to Dismiss (Doc. No. 17). Nevertheless, the Court is of the opinion that Houston Methodist has a viable argument that it is an exempt religious organization under Title VII. Thus, the Court will authorize a *limited* discovery on the sole issue of whether Houston Methodist is a religious organization and whether it is entitled to immunity from the claims brought by Plaintiffs. Plaintiffs (and Defendants, to the extent they need to) have until August 31, 2024, to conduct discovery related to this issue. After that date, Houston Methodist may file a Motion for Summary Judgment raising this issue. Methodist should do so by September 15, 2024, and Plaintiffs may respond to that motion as provided for by the Federal Rules of Civil Procedure.

After this limited discovery period, the Court will revisit the issue of whether Methodist is a religious organization and will rule at the summary judgment stage if one is filed. If the Court denies that motion, it will enter a new scheduling order and open up discovery on all relevant issues. If, however, Houston Methodist chooses not to file a motion by September 15, 2024, the parties are to file an agreed proposed scheduling order by September 30, 2024, that will take this case through trial.

Signed at Houston, Texas, this 31st day of May, 2024.

Andrew S. Hanen
United States District Judge