United States District Court
Southern District of Texas
**ENTERED**
August 19, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERARDO GARZA, *et al.*, | § § § | |
| *Plaintiffs*, | § | |
| VS. | § § | CIVIL ACTION NO. 4:22-cv-4288 |
| HOUSTON METHODIST HOSPITAL, *et al.*, | § § § | |
| *Defendants*. | § | |

## ORDER

Before the Court is a Motion for Summary Judgment by Houston Methodist Hospital ("Houston Methodist") and The Medical Staff of Houston Methodist The Woodlands Hospital ("The Woodlands Staff"). (Doc. No. 31). Gerardo Garza, Sherry Colbert, Mandy Sisto, Judith Andriko,[1] Jade Hernandez, Becky Melcer, Zoretta Curry, Tameka Clark, Stephanie Dunlap, Rosemary Aldaya, Dajuana Armstrong, Deanna Conway, Yalonda Jones, Yolunda Milton, McKenli Pinkney, Pamela Robins, Paige Thomas, Brandi Vincent, Ricardo Zelante, and Tom Reed[2] (collectively, "Defendants") responded in opposition. (Doc. No. 39). Houston Methodist filed a reply. (Doc. No. 40). Having considered the Motion, relevant pleadings, and applicable law, the Court **GRANTS** the Motion for Summary Judgment. (Doc. No. 31).

---

[1] Plaintiff Judith Andriko, though joined in the response to the Motion for Summary Judgment, asserted a different cause of action from her co-Plaintiffs, namely, a violation of the Americans with Disabilities Act. (Doc. No. 1, No. 4:22-cv-4292). Houston Methodist concedes that its Motion for Summary Judgment does not target her claims. *See* (Doc. No. 31 at 4 n.2). It separately filed a Rule 12(c) Motion for Judgment on the Pleadings against Andriko's claims. (Doc. No. 32). That Motion is addressed in a separate order.

[2] Plaintiff Tom Reed sued both Houston Methodist and The Woodlands Staff, while the rest of Plaintiffs named only Houston Methodist as Defendant. Nevertheless, The Woodlands Staff joins in this Motion, (Doc. No. 31 at 1), shifting the burden on Reed to demonstrate why The Woodlands Staff is not a religious organization, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25 (1986). Reed, however, does not attempt to carry that burden, only contesting the religious-organization status of Houston Methodist, not of The Woodlands Staff. *See* (Doc. No. 39). Thus, the **GRANTS** summary judgment Reed's claims against The Woodlands Staff.

I.  **Background**

This case involves allegations of religious discrimination related to Houston Methodist's vaccine mandate during the COVID-19 pandemic. Plaintiffs all worked at Houston Methodist in various capacities—as nurses, physical therapists, respiratory therapists, and radiology technologists, to name a few. Plaintiffs allege that they sincerely held a religious belief that prevented them from receiving the COVID-19 vaccine, and they requested accommodations to be exempted from Houston Methodist's vaccine mandate. Plaintiffs allege that their accommodation requests were denied and that they were subsequently discharged for failing to comply with the vaccination requirement.

Plaintiffs each initiated a lawsuit against Houston Methodist (and, in Reed's case, also against The Woodlands Staff) alleging violations of Title VII for religious discrimination. Finding that the suits arise out of similar occurrences, that they share common issues of fact and law, and that consolidation would save the parties' time and money, as well as saving judicial resources, the Court consolidated the suits into the above-styled matter. (Doc. No. 14).

Once all cases had been consolidated, Houston Methodist filed an Amended Motion to Dismiss. (Doc. No. 17). The Court subsequently denied the motion, holding that the issues raised by Houston Methodist—the existence of an employer-employee relationship, the applicability of religious-organization exemption, and the sincerity of Plaintiffs' specific religious exception requests—were better considered at the summary-judgment stage. *See Garza v. Houston Methodist Hosp.*, No. 4:22-cv-4288, 2024 WL 2806171 (S.D. Tex. May 31, 2024). In doing so, the Court "authorize[d] a limited discovery on the sole issue of whether Houston Methodist is a religious organization and whether it is entitled to immunity from the claims brought by Plaintiffs." *Id.* at *8. It further wrote, "[a]fter this limited discovery period, the Court will revisit the issue of whether

Houston Methodist is religious organization and will rule at the summary judgment stage if one is filed." *Id.*

That limited discovery has closed, and Defendants timely filed its Motion for Summary Judgment on the sole issue of whether Houston Methodist a religious organization, exempt from Title VII's religious-discrimination provision. (Doc. No. 31).

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant.

*Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

The sole issue raised by the Motion for Summary Judgment is whether Houston Methodist is a "religious organization" under Title VII. Plaintiffs contest that it is and further argue that, even if it is, Houston Methodist's conduct here is not covered under the exemption. The Court takes these in turn.

#### A. Whether Houston Methodist is a Religious Organization

The principal issue is whether Houston Methodist is a "religious organization" under the Title VII. Under § 2000e-1(a) of Title VII, religious organizations are exempt from the prohibition against discrimination on the basis of religion. *See* 42 U.S.C. § 2000e-1(a); *see also Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 329 (1987). Specifically, § 2000e-1(a) provides:

> This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a). While Title VII does not provide a definition for "religious organization," many district courts, including at least one district court in the Fifth Circuit, and even the EEOC look to the nine factors articulated in *LeBoon v. Lancaster Jewish Community Center* for guidance. 503 F.3d 217 (3d Cir. 2007); *see Scaffidi v. New Orleans Mission, Inc.*, No. 18-4113, 2020 WL 1531266, at *4 (E.D. La. Mar. 31, 2020); *see also Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 936 n.48 (5th Cir. 2023) (noting that "other courts, and the EEOC itself, rely on weighing the *LeBoon* factors"). The Court also notes that the parties do not dispute that these factors, at the very least, provide helpful guidance. (Doc. No. 31 at 7); (Doc. No. 39 at 14) (Pls.' Resp.) ("In the

4

absence of guidance from the Fifth Circuit, the factors in *Leboon* [] provide some guidance for determining whether an institution is a religious organization within the meaning of Title VII."). The nine factors are as follows:

1. whether the entity operates for a profit;
2. whether it produces a secular product;
3. whether the entity's articles of incorporation or other pertinent documents state a religious purpose;
4. whether it is owned by, affiliated with, or financially supported by a formally religious entity such as a church or synagogue;
5. whether a formally religious entity participates in the management, for instance, by having representatives on the board of trustees;
6. whether the entity holds itself out to the public as secular or sectarian;
7. whether the entity regularly includes prayer or other forms of worship in its activities;
8. whether it includes religious instruction in its curriculum, to the extent it is an educational institution; and
9. whether its membership is made up by coreligionists.

*Braidwood*, 70 F.4th at 936 n.48 (citing *LeBoon*, 503 F.3d at 226). Not all factors are relevant in all cases. *LeBoon*, 503 F.3d at 227. Further, "the weight given each factor may vary from case to case." *Id.*

### i. Factor 1: Whether Houston Methodist Operates for a Profit

The parties do not dispute that Houston Methodist is and has been since its inception a non-profit charitable organization under section 501(c)(3) of the Internal Revenue Code. This factor, therefore, weighs in Houston Methodist's favor.

### ii. Factor 2: Whether Houston Methodist Produces a Secular Product

Plaintiffs argue that medical care is secular because "[b]oth religious and non-religious institutions provide this product on a daily basis across the country." (Doc. No. 39 at 15). Houston

5

Methodist, on the other hand, points to its Articles of Incorporation, which, even though several amendments spanning decades, have espoused the same purpose: "This Corporation was established and maintained by The Texas Annual Conference for the South Central Jurisdiction of The United Methodist Church . . . for the purpose of caring for and healing the sick and afflicted." (Doc. No. 31-1 at 3, 10, 17, 27, 44, 50, 61). In the same vein, in its response to an interrogatory propounded by Plaintiffs, Houston Methodist stated that it "provides medical care for and healing of the sick and afflicted *as a means of advancing the health care ministry of the Texas Annual Conference of the South Central Jurisdiction of The United Methodist Church to regard all individuals as persons of sacred worth and value*." (Doc. No. 31-4 at 5) (emphasis added).

Moreover, Mark Easterly, the Vice President of Legal Services for Houston Methodist, testified at his deposition that Houston Methodist "deliver[s] services in accordance with [the] dictates of the Book of Discipline," a book that the Methodist Church publishes to give the church's opinion on social issues such as adoption, abortion, euthanasia, and the death penalty. (Doc. No. 31-3 at 49:2–15). For example, Easterly testified that, because the Book of Discipline states "the church does not support abortion except only in cases where the life of the mother is in danger or if there is a diagnosed fetal anomaly that's incompatible with life," Houston Methodist does not provide obstetrics care that "would contravene with what's stated in the Book of Discipline."[3] (*Id.* at 49:16–25).

Courts have found this factor to weigh in favor of the medical-care provider because '[t]reatment of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect a religious character." *Boydston v. Mercy Hosp. Ardmore, Inc.*, No. CIV-18-444-G, 2020 WL 1448112, at *5 (W.D. Okla. Mar. 25, 2020); *see also Conway v.*

---

[3] In the intervening period between the deposition and this Order, Texas law governing abortion has changed, so that Houston Methodist only performs abortions in the former category. (Doc. No. 31 at 13).

6

*Mercy Hosp. St. Louis*, No. 4:22-CV-1113 RLW, 2024 WL 551892, at *5 (E.D. Mo. Feb 12, 2024). Here, the summary-judgment evidence compels the same conclusion. While medical care, standing alone, may be secular, in this case, it is motivated and administered using its religious purpose and values as guidelines. Thus, this factor weighs in favor of Houston Methodist.

### iii. Factor 3: Whether Houston Methodist's Articles of Incorporation or Other Pertinent Documents State a Religious Purpose

As explained above, Houston Methodist's Articles of Incorporation state that it was established by the Methodist Church "for the purpose of caring for and healing the sick and afflicted." (Doc. No. 31-1 at 61). Plaintiffs argue that this is insufficient to tip this factor in Houston Methodist's favor because this is the purpose of *all* hospitals, regardless of their religion or secularity. (Doc. No. 39 at 15).

That may be, but other summary-judgment evidence—which Plaintiffs do not address, let alone controvert—more clearly demonstrate Houston Methodist's religious purpose. The current bylaws of Houston Methodist states that it "is a *Christian* health care organization established by the Texas Annual Conference of the South Central Jurisdiction of The United Methodist Church (the "Conference") *for the purpose of providing quality health care services in a spiritual environment.*" (Doc. No. 31-7 at 5) (emphasis added). Further, it states, under the header "MISSION," that "[t]he Conference "has encouraged and inspired institutions of healing in a spiritual environment as a *physical expression of this ministry*" and that Houston Methodist "share[s] and "participates in this ministry." (*Id.* at 6) (emphasis added). Consequently, Plaintiffs do not raise a genuine issue of material fact as to this factor.

### iv. Factor 4: Whether Houston Methodist is Owned by, Affiliated with, or Financially Supported by a Formally Religious Entity

It is uncontroverted that Houston Methodist is affiliated with a formal religious entity—namely, the United Methodist Church. The founding Articles of Incorporation states that Houston

7

Methodist is "an arm of The Methodist Church, and is the hospital facility of the [Conference]." (Doc. No. 31-1 at 3). Even after subsequent amendments, it maintained that affiliation with the church, with the current Articles of Incorporation stating that it seeks to "advance the historic mission of the Conference." (*Id.* at 61). The bylaws also state that Houston Methodist "participates in this ministry" of the Conference. (Doc. No. 31-7 at 6). The uncontroverted interrogatory responses of Houston Methodist also confirm this, stating that the Houston Methodist is "supported and controlled by The Methodist Church." (Doc. No. 31-4 at 7).

Instead of challenging the ownership or affiliation of Houston Methodist, Plaintiffs argue that "[t]he role of the Texas Conference of the United Methodist Church is limited as it relates to the Defendant." (Doc. No. 39 at 17). They argue that, while the church has the right to approve the directors on the board of directors, it does not have the power to determine what employees Houston Methodist hires or fires. (*Id.*).

Plaintiffs' argument, however, misunderstands this factor. By focusing on ownership, affiliation, or financial support broadly, this factor asks not whether the formally religious entity has a hand on the organization's day-to-day employment decisions, but rather, whether the organization *as a whole* could be fairly characterized as a religious one. Indeed, by the plain language of this factor, material financial support, for example, would weigh this factor in favor of finding of religious organization, even if that financial supporter does not have a hand in the employment decisions. This argument is better understood as challenging the specific conduct of a purported religious organization, not the religious character of the organization itself. Plaintiffs make just such a challenge, which is addressed below. Nevertheless, that is downstream from the factor at hand.

Moreover, Plaintiffs cite to no authority that requires the formal religious entity to make employment decisions for the religious-organization exemption to apply. In fact, courts across the nation have required no such thing. *See, e.g.*, *Hamil v. Acts Retirement-Life Communities, Inc.*, No. 22-00366-KD-B, 2025 WL 627227, at *8 (S.D. Ala. Feb. 26, 2025) (finding this factor weighs in favor of the purported religious organization based on affiliation, not control over employment decisions); *Jacobs v. Mercy Health*, 719 F. Supp. 3d 894, 905 (E.D. Mo. 2024) (same); *Spencer v. World Vision, Inc.*, 570 F. Supp. 2d 1279, 1287 (W.D. Wash 2008) (same); *Leboon*, 503 F.3d at 227 (same). Thus, in accordance with those courts, this Court finds that this factor also weighs in favor of Houston Methodist.

        v.    **Factor 5: Whether a Formally Religious Entity Participates in the Management of Houston Methodist**

Plaintiffs argue, without supporting evidence, that Houston Methodist does not require its Board of Directors to be members of the Methodist Church. (Doc. No. 39 at 16). To the contrary, the governing bylaws state that "[t]he Board of Directors shall consist of no more than twenty-six and no fewer than fifteen Directors, *at least 60% of whom shall be members of The United Methodist Church*." (Doc. No. 31-7 at 6) (emphasis added). The bylaws also require that "[t]he Resident Bishop of the Conference and no fewer than three other United Methodist Ministers shall be selected as Directors." (*Id.* at 6–7). Indeed, the Resident Bishop exercises substantial authority on the Board, "responsible for nominating to the Governance Committee of the Board of Directors three Methodist Ministers to be directors." (*Id.* at 7).

The church's reach does not stop there. In addition to requiring a majority of the directors to be members of the Methodist Church, the selection process hinges entirely upon the Conference within the church. After the board recommends nominees to the Committee on Nominations of the Conference, that committee, in turn, makes a recommendation to the full Conference. (*Id.* at 7).

9

The Conference then votes on the nominations. (*Id.*). No other person, other than those in the Conference—an undisputed arm of the United Methodist Church—can vote on the members. *See* (*id.*). Thus, it is clear that the church participates in the management of Houston Methodist. Plaintiffs have failed to raise a fact issue as to this factor, and it weighs in Houston Methodist's favor.

### vi. Factor 6: Whether Houston Methodist Holds Itself Out to the Public as Secular or Sectarian

Houston Methodist puts forth a plethora of evidence that show that it holds itself out as a sectarian organization. First and foremost is its name—Houston *Methodist*. Second, as explained above, its publicly-available incorporation documents expressly state its ties to the Methodist Church. Third, the Methodist symbol—cross and flame—is prominently displayed in all of Houston Methodist's buildings and marketing materials. (Doc. No. 31-3 at 15:20–22); (Doc. No. 31-4 at 8). Fourth, religious iconography, such as statues and paintings, is displayed throughout its facilities. (Doc. No. 31-3 at 15:22–24); (Doc. No. 31-4 at 8); (Doc. No. 31-10 at 2, 3, 7, 8, 16, 17, 41). Fifth, Houston Methodist maintains a staff of ordained chaplains, 24 full-time and 30 temporary or contract. (Doc. No. 31-4 at 8). Though these chaplains are of diverse denominations, (*id.*), they are far from secular. Sixth, Houston Methodist partners with the Southern Methodist University ("SMU") School of Theology so that SMU trainees perform rotations at Houston Methodist as part of their clinical pastoral education training. (*Id.*); (Doc. No. 31-3 at 16:11–19). Seventh and finally, Houston Methodist recognizes, Christmas, Easter, and Good Friday as religious holidays. (Doc. No. 31-4 at 8). Plaintiffs do not point to any conflicting evidence. These uncontroverted pieces of evidence, therefore, demonstrates that Houston Methodist holds itself out to the public as a sectarian organization.

Despite this, Plaintiffs argue that this factor weighs in their favor because Houston Methodist "does not attempt to proselytize or convince people to accept Christ." (Doc. No. 39 at 16). The statute, however, does not exempt religious organizations from Title VII only when they attempt to proselytize or evangelize. *See* 42 U.S.C. § 2000e-1(a). It simply permits religious organizations to make certain employment decisions in connection with its "activities." *Id.* Tellingly, Plaintiffs cite to no authority in support of this extra-textual requirement. Thus, their argument fails.

### vii.   Factor 7: Whether Houston Methodist Regularly Includes Prayer or Other Forms of Worship in Its Activities

Houston Methodist provides chapel services to people of various faiths. (Doc. No. 31-3 at 39:5–40:12). Houston Methodist's corporate representative concedes, however, that secular hospitals also offer similar services. (*Id.*). Moreover, patients are not required to attend these services.

Nevertheless, the uncontroverted summary-judgment evidence shows that it does include prayer in its activities involving its employees and staff. Easterly testified that the Board of Directors meetings begin with an invocational prayer, led by Houston Methodist's Senior Vice President of Spiritual Care, Dr. Charles Millikan. (Doc. No. 31-3 at 17:13–19); (Doc. No. 31-4 at 8). Similarly, the Boards of Trustees of each of Houston Methodist's hospital facilities also begin their respective meetings with an invocation. (Doc. No. 31-3 at 18:1–2); (Doc. No. 31-4 at 8). So, too, do the medical staff during their general and quarterly meetings. (Doc. No. 31-3 at 18:2–4); (Doc. No. 31-4 at 8–9). Likewise, various leadership retreats of Houston Methodist begin with a prayer. (Doc. No. 31-3 at 18:4–5); (Doc. No. 31-4 at 9). Finally, "Houston Methodist regularly broadcasts scripture readings and other religious messages throughout its facilities." (Doc. No. 31-

4 at 9). Thus, the Court concludes that Houston Methodist regularly includes prayer or other forms of worship in its activities.

### viii. Factors 8 and 9: Whether Houston Methodist Includes Religious Instruction in Its Curriculum and Its Membership is Made Up by Coreligionists

Houston Methodist argues that factors eight and nine are not applicable to it and this case. Factor eight asks whether Houston Methodist includes religious instruction in its curriculum, "to the extent it is an educational institution." *LeBoon*, 503 F.3d at 226. Houston Methodist is not an educational institution, and Plaintiffs do not even argue that this factor applies, let alone weigh in their favor. Thus, the Court agrees that factor eight is inapplicable. *See id.* at 227 (stating that "not all factors will be relevant in all cases").

It is arguable, however, whether factor nine is inapplicable. Indeed, hiring only Methodists, or even Christians of other denominations, might lend greater credence to Houston Methodist's contentions. Easterly, however, testified that "people of all faith" or non-faith work at Houston Methodist. (Doc. No. 31-3 at 22:6–18). Thus, the Court finds that this factor is applicable but favors neither side.

Nevertheless, even if this factor weighed against Houston Methodist, the Court finds that the other factors outweigh this factor. The Court, therefore, concludes that Houston Methodist is a religious organization under 42 U.S.C. § 2000e-1(a).

### B. Whether Houston Methodist's Conduct is Covered by the Exemption

That conclusion does not end the today's inquiry. Plaintiffs argue that, even if Houston Methodist is a religious organization, its conduct nevertheless falls outside of the exemption because it "did not employ Plaintiffs based on their beliefs, observances, or practices[ n]or were Plaintiffs fired for violating a Methodist belief, observance[,] or practice." (Doc. No. 39 at 12). In

essence, Plaintiffs argue that the employment decision must be motivated by the employer's religion to fall under this exemption.

This argument, however, adds an extra-textual limitation to § 2000e-1(a). To reiterate, the statute provides:

> This subchapter shall not apply to [1] a religious corporation[ or] association . . . [2] with respect to the employment of individuals of a particular religion [3] to perform work connected with the carrying on . . . of its activities.

42 U.S.C. § 2000e-1(a). Here, all three prongs of the exemption are met. First, as the Court concluded above, Houston Methodist is a religious corporation. Second, at least according to Plaintiffs, Houston Methodist made an employment decision regarding "individuals of a particular religion"—namely, those of a religion that bars the receipt of the COVID-19 vaccine. In fact, that is the entire basis of Plaintiffs' suits. Third, Plaintiffs performed work "connected with the carrying on . . . of [Houston Methodist's] activities"—caring for the sick and the afflicted. Nowhere in the statute is the limitation that the reason for the employment decision must stem from the *employer's* religion, not the *employee's*.

Plaintiffs' own brief makes this distinction clear. They explain that the original statute, enacted in 1964, exempted from Title VII a religious organization that made employment decisions regarding "individuals of a particular religion to perform work connected with the carrying on . . . of its *religious* activities." (Doc. No. 39 at 9) (Title VII—Equal Employment Opportunity, Pub. L. No. 88-352, § 702, 78 Stat. 253, 255 (1964)) (emphasis added). Concluding that such an exemption was "unnecessarily narrow," Congress amended it in 1972 to what it is now: exempting religious organizations from Title VII "with respect to the employment of individuals of a particular religion to perform work connected with the carrying on . . . of its *activities*." § 2000e-1(a); *see also Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 338 (1987). That is, Congress broadened the exemption to encompass not just those employment

13

decisions motivated by a religious organization's religious activities, but those connected with its activities generally—religious or not.

Of course, even if the statute reads today as it did in 1964, Plaintiffs' argument would lack merit still. Caring for the sick and the afflicted is undoubtedly the core of Houston Methodist's religious mission and activities.[4] *See* (Doc. No. 31-4 at 5) (stating that Houston Methodist's purpose is to care for the sick and afflicted as a part of advancing the health care ministry of the Conference). Healthcare workers, like Plaintiffs, "perform work connected" with that religious mission. *See* § 2000e-1(a). Thus, the statute gives Houston Methodist a latitude to hire individuals of only certain religious—those whose religions do not prohibit the receipt of the vaccine—to perform work connected with its religious mission. Consequently, the Court concludes that Houston Methodist's employment decision at issue here falls within the scope of the exemption.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Houston Methodist and The Woodlands Staff's Motion for Summary Judgment. (Doc. No. 31). This is a final and appealable judgment.

It is so ordered.

Signed on this the ___15___ day of August, 2025.

Andrew S. Hanen
United States District Judge

---

[4] Plaintiffs argue that the vaccine mandate is not a part of Methodist belief, observance, or practice. (Doc. No. 39 at 12). Whether that is true or not does not affect the Court's conclusion here because not only does the statute only require a connection with a religious organization's *activities*—not beliefs—the Supreme Court has recognized the religious-organization exemption's "legitimate purpose of alleviating significant government interference with the ability of religious organizations to *define and carry out* their religious missions." *Amos*, 483 U.S. at 339. Thus, the Court declines to interfere with Houston Methodist's ability to define its own religious mission.